IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HECTOR VASQUEZ, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| CAROLYN COLVIN[1], | : | |
| Acting Commissioner of Social Security, | : | |
| Defendant | : | NO. 12-6169 |

**REPORT AND RECOMMENDATION**

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

    This action was brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied the application of Hector Vasquez for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  Presently before this court are, the plaintiff's request for review and the defendant's response to request for review.  For the reasons set forth below, this court recommends that plaintiff's request for review be DENIED.

I.  FACTUAL AND PROCEDURAL HISTORY

    Plaintiff is a twenty-two (22) year old male born on July 15, 1991.  (Tr. 95). Plaintiff completed the eleventh grade.  (Tr. 124).  Plaintiff has no past relevant work at substantial gainful activity levels (Tr. 101).

    On September 10, 2009, plaintiff filed an application for SSI.  (Tr. 17).  Plaintiff claimed disability since July 15, 2001.  (Tr. 95).  This application was denied at the state level,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for previous Commissioner Michael J. Astrue as defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

on June 11, 2010. (Tr. 43-47). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).

A hearing before ALJ Paula Garrety took place on March 30, 2011. (Tr. 30-41). Plaintiff, represented by counsel, testified, along with a vocational expert. (Tr. 3041). The ALJ found that plaintiff's severe impairments were: depression, bipolar disorder, borderline intellectual functioning, post-traumatic stress disorder (PTSD), and substance abuse disorder. (Tr. 19). The ALJ further determined that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: plaintiff is confined to simple and routine tasks, in jobs with no detailed instructions, few work changes, and limited contact with the public and co-workers. (Tr. 21). The ALJ determined that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 24).

Plaintiff requested review before the Appeals Council. The Appeals Council upheld the ALJ's decision on August 28, 2012, permitting the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-3). Plaintiff subsequently appealed that denial to this court.

## II.    LEGAL STANDARDS

The role of this court, on judicial review, is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Pierce v. Underwood, 587 U.S. 552 (1988). "Substantial evidence" is not "a large or significant amount of evidence but rather such relevant evidence as a reasonable mind might accept to support a conclusion." Id. at 664-65. Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, 402 U.S. 401 (1971); Kangas v. Bowen,

823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). In determining whether substantial evidence exists, the reviewing court may not weigh the evidence or substitute its own conclusion for that of the ALJ. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). If the court determines the ALJ's factual findings are supported by substantial evidence, then the court must accept the findings as conclusive. Richardson, 402 U.S. at 390; Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984). It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. Richardson, 402 U.S. at 401. While the Third Circuit has made it clear that the ALJ must analyze all relevant evidence in the record and provide an explanation for disregarding evidence, this requirement does not mandate the ALJ "to use particular language or adhere to a particular format in conducting his analysis." Rather, it is meant "to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health and Human Services, 841 F.2d 57 (3d Cir. 1988), quoting Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423(d)(1) (1982). The claimant satisfies his burden by showing an inability to return to his past relevant work. Doak v. Heckler, 790 F.2d at 28; Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979) (citing Baker v. Gardner, 362 F.2d 864 (3d Cir. 1966)). Once this showing is made, the burden of proof shifts to

the Commissioner to show that the claimant, given his age, education, and work experience, has the ability to perform specific jobs that exist in the economy. 20 C.F.R. § 404.1520. See Rossi v. Califano, 602 F.2d at 57.

As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.     ADMINISTRATIVE LAW JUDGE'S DECISION

Using the above mentioned sequential evaluation process, the ALJ determined plaintiff has not been under a "disability," as defined in the Social Security Act, since September 10, 2009, the date the plaintiff's application was filed, through the date of the ALJ's decision. (Tr. 25).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful work activity since plaintiff's application date. (Tr. 19). At step two, the ALJ found that

4

plaintiff's depression, bipolar disorder, borderline intellectual functioning, post-traumatic stress disorder (PTSD), and substance abuse disorder were "severe" impairments within the meaning of the Regulation. (Tr. 19). In making this determination the ALJ relied upon plaintiff's following summarized medical records:

On May 26, 2008, plaintiff was taken by ambulance to the emergency department of Aria Health. (Tr. 262- 269). The record notes that plaintiff had run away from his foster home and then returned and was found sitting on the front steps bleeding. Plaintiff claimed he had been assaulted by two men. It was noted that plaintiff was using Xanax and smoking marijuana. (Tr. 263). Plaintiff was given a diagnosis of suicidal ideations and lip laceration. (Tr. 263). Plaintiff was involuntarily transferred to Fairmount Behavioral Health System on May 27, 2008, and remained there from May 27, 2008 through June 3, 2008. (Tr. 272-309). Plaintiff's drug screen was positive for cocaine, cannabinoid, benzodiazepines, and PCP. (Tr. 272). Plaintiff admitted to being physically abused in a former foster home, and that his siblings were physically and sexually abused by their biological father. (Tr. 272). Plaintiff's admitting diagnoses were oppositional defiant disorder, and polysubstance abuse. Plaintiff was given a GAF score[2] of 50.[3] (Tr. 273). At discharge, plaintiff's diagnosis was polysubstance abuse. Plaintiff's GAF score was 40.[4] It was recommended that plaintiff attend White Deer Run, an inpatient drug rehabilitation program. (Tr. 275).

On July 12, 2008, plaintiff was admitted to Friends Hospital following another suicide attempt. (Tr. 318-319). It was noted that plaintiff's mood was apathetic and affect was

---

2 The Global Assessment of Functioning is a numeric scale (0 through 100) used by mental health clinicians and doctors to "measure the psychological, social, and occupational functioning levels of an individual." Torres v. Barnhart, 139 F. App'x 411, 415 n.2 (3d Cir. 2005)(citations omitted).
3 A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 32.
4 A GAF score of 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 32.

anxious. It was also noted that plaintiff has average intelligence, but plaintiff's insight and judgment are poor. (Tr. 318). Plaintiff's admission GAF score was 19. Plaintiff was discharged on July 21, 2008, with diagnoses of disruptive behavior disorder, marijuana dependence, and sedative/hypnotic dependence. Plaintiff's discharge GAF score was 48.[5] (Tr. 319).

Dr. Pramod Pilania, M.D., from Northeast Community Mental Health Center, completed a psychiatrist's evaluation of plaintiff on July 28, 2008. (Tr. 340-345). Dr. Pilania found plaintiff's estimate of intelligence was below average. (Tr. 342). Plaintiff's diagnosis was post traumatic stress disorder, cannabis dependence, Xanax abuse, and learning disorder. Plaintiff was given a GAF score of 60.[6] Plaintiff reported depressed mood, decreased energy, increased crying spells, poor sleep, increased anxiety, and frequent nightmares and flashbacks from physical as well as sexual abuse sustained in childhood. (Tr. 342). It was noted that plaintiff is biologically predisposed to learning disorder as well as psychiatric illness. (Tr. 343)

A physician statement from Northeast Community Mental Health Center, completed on July 31, 2008, diagnosed plaintiff with post traumatic stress disorder, cannabis dependency, and learning disorder. Plaintiff was again given a GAF score of 60. (Tr. 346).

Plaintiff had multiple arrests for offenses involving drugs and drug possession, and was ordered to residential treatment at Devereux Foundation-Beneto Center. (Tr. 429-529). Plaintiff was admitted to Devereux on September 10, 2008 and discharged on May 4, 2009. (Tr. 429-529). Plaintiff's admission diagnosis was impulse control disorder, depressive disorder, cannabis abuse, and plaintiff was given a GAF score of 35. (Tr. 430). Plaintiff had "reasonable satisfactory entrance into the program" and exhibited "good impulse control that reduced the

---

[5] A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 32.
[6] A GAF score of 51-60 indicates "moderate symptoms (e.g. flat effect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 32.

frequency of disruptive behavior and problematic interactions with peers." (Tr. 431). Plaintiff "made a very good adjustment" to the school program, completed all classroom assignments, and participated in class. (Tr. 430). However, plaintiff "needed assistance in order to focus on reading and comprehensive skills." (Tr. 430). On discharged plaintiff was prescribed Wellbutrin, Seroquel, and Benadryl and was given a GAF score of 50. (Tr. 433).

Plaintiff was treated at Warren E. Smith Health Centers ("WES"). (Tr. 536-553). Plaintiff was diagnosed with major depressive disorder, PTSD, learning disorder and was given a GAF score of 60 on July 22, 2009. (Tr. 548-549). It was also noted that plaintiff's speech was normal, and his thought process was logical and goal-directed. Additionally, it was noted that plaintiff appeared to be of average intelligence. (Tr. 548).

Plaintiff was again admitted to inpatient treatment at Farimount Behavioral Health System on November 11, 2009, after assaulting his sister and ingesting a toxic level of Xanax and Seroquel. (Tr. 629-668). Plaintiff was diagnosed with depression, Xanax and cannabis dependence, and was given a GAF score of 50. Plaintiff was discharged on November 17, 2009. (Tr. 629).

Dr. Joseph Foote, Ph.D., completed a consultative examination report on January 19, 2010. (Tr. 556-562). Plaintiff claimed he could not work at the time because plaintiff cannot concentrate, is easily frustrated, and has not finished high school. Plaintiff's foster mother informed Dr. Foote that plaintiff is severely depressed and frequently stays in the house and will not go out. Plaintiff stated that when the depression is bad plaintiff spends time in bed, does not eat, constantly worries, and has a difficult time sleeping. (Tr. 557). Plaintiff reported using marijuana three to four times a week, using cocaine once a month, and Xanax a few times a week. (Tr. 559). The report notes that plaintiff quit school three credits short of graduating.

Plaintiff claimed he quit school because of his depression.  (Tr. 559).   During the examination plaintiff was cooperative, oriented for person, place, and time, and plaintiff's speech was clear and goal-oriented.  Dr. Foote noted plaintiff's history of suicide ideations and depression.  (Tr. 560).  Dr. Foote recorded an impression that plaintiff is in the borderline range or mild level of mental retardation.  (Tr. 561).  Dr. Foote diagnosed plaintiff with major depressive disorder, PTSD, polysubstance drug use, and mental retardation, level not specified.  Plaintiff was given a GAF score of 45.  (Tr. 561).

Dr. Foote completed another consultative examination report on May 21, 2010.  (Tr. 565-570).  Plaintiff stated that he had difficulty reading and writing and had been in special education classes.  (Tr. 569).  Dr. Foote administered the Wechsler Adult Intelligence Scale- Addition III.  Plaintiff received a verbal IQ score of 67 and a performance IQ score of 70.  Plaintiff's full scale IQ was 66, which placed plaintiff in the mild level of mental retardation.  (Tr. 569).

On February 20, 2010, plaintiff's treating physician, Onilda Harran, M.D. diagnosed plaintiff with mood disorder, learning disability, anxiety, dependence on alcohol and cannabis, and assigned a GAF score of 55.  (Tr. 690).

Dr. John N. Grutkowski, Ph.D., a state agency psychologist, completed a psychiatric review technique on June 10, 2010.  (Tr. 571-583).  Dr. Grutkowski found diagnoses of major depressive disorder, mild mental retardation, PTSD by history, and polysubstance dependence in remission.  (Tr. 571-583).  Plaintiff has mild restrictions in daily living and moderate difficulties in maintain social functioning, concentration, persistence, or pace.  (Tr. 581).  On the same day Dr. Grutkowski completed a mental residual functional capacity assessment.  (Tr. 584-586).  Dr. Grutkowski found plaintiff has moderate limitations in the

ability to carry out detailed instructions, to work in coordination with or proximity to other without being distracted by them, interact appropriately with the general public, and get along with coworkers or peers without distracting them. Further, plaintiff has moderate limitations in the ability to respond appropriately to changes in work setting, be aware of normal hazards and take appropriate precautions, and travel in unfamiliar places. (Tr. 584-585). Dr. Grutkowski found that plaintiff is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from plaintiff's impairments. (Tr. 586).

On July 14, 2010, plaintiff's treating physician, Dr. Onilda Herran, M.D., indicated that plaintiff was precluded from any gainful employment due to plaintiff's temporarily disabled condition, which was expected to last six (6) months. (Tr. 587).

Continuing with the five step analysis, the ALJ moved onto step three. At step three, the ALJ found plaintiff does not have an impairment, or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.920(d), 416.925 and 416.926). (Tr. 19).

At step four, the ALJ found that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: plaintiff is confined to simple and routine tasks, in jobs with no detailed instructions, few work changes, and limited contact with the public and co-workers. (Tr. 21). The ALJ considered all symptoms and the extent to which the symptoms could reasonably be accepted consistent with the objective medical evidence and other evidence. (Tr. 21). Further, the ALJ considered opinion evidence. (Tr. 21).

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, plaintiff's statements

concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment. (Tr. 23).

Finally, at step five the ALJ found that plaintiff has no relevant past work. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 24). Thus, the ALJ determined that plaintiff has not been under a "disability," as defined in the Social Security Act, since September 10, 2009, the date plaintiff application was filed. (Tr. 25).

IV.          PLAINTIFF'S CONTENTIONS

Plaintiff alleges: (1) Substantial evidence does not support the ALJ's finding that plaintiff's mental impairments do not meet the criteria of §12.05(C), the mental retardation listing; (2) The ALJ erred in not obtaining medical expert testimony; and (3) The court should reverse the ALJ's decision and award benefits.

V.          DISCUSSION OF MERITS

The Commissioner's findings must be affirmed if they are supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). The role of this court is to determine whether there is substantial evidence to support the Commissioner's decision. Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924, 113 S. Ct. 1294 (1993). In coming to a decision, it is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. Richardson v. Perales, supra.

In the case at bar, the ALJ determined that medical evidence established plaintiff's depression, bipolar disorder, borderline intellectual functioning, post-traumatic stress disorder (PTSD), and substance abuse disorder were "severe" impairments within the meaning of the

Regulation. (Tr. 19). The ALJ further found that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: plaintiff is confined to simple and routine tasks, in jobs with no detailed instructions, few work changes, and limited contact with the public and co-workers. (Tr. 21). The ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 24). After review of the records, this court finds the ALJ's decision was supported by substantial evidence. As such, plaintiff's request for review should be DENIED.

### A. Requirements of Listing 12.05C

Plaintiff argues that the ALJ committed a reversible error by failing to rule that plaintiff meets the criteria of Listing 12.05C. Plaintiff's claims that the ALJ erred at Step 3 in failing to find that plaintiff was disabled under Listing 12.05C for mental retardation. Specifically, plaintiff argues that the ALJ lacked substantial evidence to support the ALJ's conclusion that there was no evidence of significant deficit in adaptive function during the developmental period.

At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir.2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir.2000); 20 C.F.R. §§ 404.1520(d) and 416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

The listing for mental retardation set forth in § 12.05(C) of Appendix 1 provides as follows:

> 12.05. Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> …
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function ...
>
> 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Pursuant to the Regulations and case law in this circuit, in order to meet Listing 12.05, a claimant must meet both the introductory criteria to that listing, requiring "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested [before age 22]," and the criteria of one of paragraphs A through D. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A; Gist v. Barnhart, 67 Fed. Appx. 78, 81 (3d Cir.2003) ("[a]s is true in regard to any 12.05 listing, before demonstrating the specific requirements of Listing 12.05C, a claimant must show proof of a 'deficit in adaptive functioning' with an initial onset prior to age 22.")

In the case at bar, the ALJ found that although plaintiff's IQ scores were between 60 and 70, the listing criteria are still not met because the evidence does not support significant deficits in adaptive functioning. (Tr. 21). The ALJ disputed the existence of deficits by stating the following:

> Claimant is able to take care of his personal needs and he independently cleans, prepares meals, and does household and yard work. Moreover, he is the sole caregiver for his 5 month old daughter for 8 hours daily, five days a week.

The ALJ noted that the results from a September 29, 2008, Kaufman Brief Intelligence Test (K-Bit-2) showed that plaintiff had a verbal score of 69, a nonverbal score of 74, and a IQ composite score of 67. (Tr. 384).  Additionally, on May 21, 2010, Dr. Foote, administered the Wechsler Adult Intelligence Scale (WAIS-III) and found plaintiff had a verbal IQ score of 67, a performance IQ score of 70, and a full scale IQ score of 66.  (Tr. 569).  The ALJ explained that although plaintiff's IQ scores were between 60 and 70, as required by Listing 12.05C, that listing is not met because plaintiff does not have significant deficits in adaptive functioning.

Plaintiff claims that the ALJ found plaintiff did not meet 12.05C because plaintiff '"was actively using drugs on a daily basis" when Dr. Foote administered his testing, "and it is impossible to tell whether Plaintiff's daily drug use in any way affected the results."' (Plaintiff's Req. for Review, 2/2/13, p. 4).  However, the ALJ did not discredit the above listed IQ scores, nor did the ALJ find that plaintiff didn't meet listing 12.05C because plaintiff was using drugs when the tests were administered.  The ALJ only noted that plaintiff was using drugs when the tests were administered, rending it impossible to tell whether plaintiff's drug use affected the results.  The ALJ then found that although plaintiff's IQ scores were between 60 and 70, plaintiff failed to prove significant deficits in adaptive functioning.  Thus, while the ALJ noted plaintiff's drug use, the ALJ still accepted those IQ score for purposes of deciding if plaintiff met the criteria of 12.05C.

The ALJ did not discuss plaintiff's school records.  The court notes that although plaintiff received As and Bs in seventh grade, he did have final grades of F in Algebra and English.  In eighth grade, plaintiff again received mainly As and Bs, but did

13

have final grades of F in Biology and Geometry. However, in ninth grade plaintiff received all As and Bs. (Tr. 243). Plaintiff began a special education program at Devereux Beneto Center in tenth grade and again received all As and Bs, except for one D in physical science. (Tr. 163). Plaintiff dropped out of school in the twelfth grade.

As explained in the summarized medical records above, Dr. Pilania, from Northeast Community Mental Health Center, completed a psychiatrist's evaluation of patient on July 28, 2008 and found plaintiff's estimate of intelligence was below average and gave plaintiff diagnoses of post traumatic stress disorder, cannabis dependence, Xanax abuse, and learning disorder. (Tr. 342). Additionally, plaintiff was treated at WES and on July 22, 2009 took part in a comprehensive bio-psychosocial re-evaluation. (Tr. 546-549). Plaintiff was diagnosed with major depressive disorder, PTSD, learning disorder and was given a GAF score of 60. (Tr. 548-549). It was also noted that plaintiff's speech was normal, and his thought process was logical and goal-directed. Additionally, it was noted that plaintiff appeared to be of average intelligence. (Tr. 548).

The ALJ gave limited weight to the opinion of the consultative examiner, Dr. Foote, who completed a consultative examination report on January 19, 2010. (Tr. 556-562). Dr. Foote recorded an impression that plaintiff is in the borderline range or mild level of mental retardation. (Tr. 561). Dr. Foote diagnosed plaintiff with major depressive disorder, PTSD, polysubstance drug use, and mental retardation, level not specified. Plaintiff was given a GAF score of 45. (Tr. 561). The ALJ explained that:

> During the examination of the CE [consultative examiner], the claimant was cooperative; he was oriented for person, place, and time; and his speech was clear and goal-oriented. The CE noted that the claimant did not have any difficulties with activities of daily living or self-care. Of note, this examination was performed at a time when claimant admitted drug use, at times on a daily basis. With the exception of the CE's

14

> findings, all the treatment notes reflect that the claimant was given a GAF
> score between 50 and 60.  In addition, as stated above, the claimant is
> capable of performing activities of daily living and taking care of his 5
> [month] old daughter.  The CE's conclusion appears to have been based
> on the claimant's self-reported limits.
> (Tr. 23)

Dr. Grutkowski, a state agency psychologist, completed a psychiatric review technique and a mental residual functional capacity assessment on June 10, 2010.  (Tr. 571-583). Dr. Grutkowski found diagnoses of major depressive disorder, mild mental retardation, PTSD by history, and polysubstance dependence in remission.  (Tr. 571-583).  Plaintiff has mild restrictions in daily living and moderate difficulties in maintain social functioning, concentration, persistence, or pace.  (Tr. 581).  While Dr. Grutkowski found plaintiff had a medically determinable impairment of mild mental retardation, he specifically found that plaintiff did not meet the criteria for listing 12.05C, because plaintiff did not have subaverage general intellectual functioning with deficits of adaptive functioning.  Further, Dr. Grutkowski found that plaintiff is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from plaintiff's impairments.  (Tr. 586).

Plaintiff argues that the ALJ was required to specify which professional standard of measuring deficits of adaptive functioning the ALJ used, however the ALJ is not required to use any particular language.  While an ALJ need not use any particular language or adhere to a particular format in analyzing the applicability of a listing, he must set forth the reasons for his decision. *See* Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir.2004); Burnett v. Commissioner of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir.2000).  There must be sufficient development of the record and explanation of the findings to permit meaningful review. *See* Jones, 364 F.3d at 505. Here, in finding plaintiff did not have significant deficits in adaptive functioning, the ALJ explained that plaintiff takes care of his personal needs and he independently cleans, prepares

15

meals, does household and yard work, and he is the sole caregiver for his 5 month old daughter for 8 hours daily, five days a week. Further into the ALJ's opinion, the ALJ noted multiple medical records where plaintiff was diagnosed with a learning disorder. The ALJ also noted that Dr. Foote diagnosed plaintiff as mentally retarded. However, the ALJ provided substantial support for not giving weight to the opinion of Dr. Foote. Finally, Dr. Grutkowski's found that plaintiff had a medically determinable impairment of mild mental retardation; however, plaintiff did not meet the criteria for listing 12.05C, because plaintiff did not have subaverage general intellectual functioning with deficits of adaptive functioning. Further, Dr. Grutkowski found that plaintiff is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from plaintiff's impairments. (Tr. 586). Substantial evidence supports the ALJ's conclusion that plaintiff did not prove that he had the "deficits in adaptive functioning" that are necessary in order to meet Listing 12.05C. As such, plaintiff's request for review must be dismissed as to this claim.

      B. <u>Medical Expert Testimony</u>

Plaintiff next claims that the ALJ was required to obtain additional medical expert testimony. Plaintiff claims that the ALJ had an obligation to obtain medical opinion testimony because the medical evidence suggests that plaintiff's combined impairments meet Listing 12.05C. Plaintiff argues that while it is the ALJ's province to determine the impact of combined ailments, the determination must be based on an expert medical opinion.

This court finds that it was unnecessary for the ALJ to obtain a medical expert to testify regarding whether plaintiff's impairments meet Listing 12.05C. First, case law indicates "an ALJ is not required under the Social Security regulations to seek out medical expert testimony. Instead, the regulations set out a permissive standard: An ALJ 'may also ask for and

consider opinions from medical experts on the nature and severity' of a claimant's impairments." Jakubowski v. Comm'r of Soc. Sec., 215 F. App'x 104, 107 (3d Cir.2007) (citing 20 C.F.R. § 404.1527(f) (2)(iii)).  Additionally, a state agency examiner, Dr. Grutkowski, reviewed the record and made the determination that plaintiff did not meet the criteria for Listing 12.05C, because plaintiff did not have subaverage general intellectual functioning with deficits of adaptive functioning. (Tr. 586).  Under 20 C.F.R. § 404.1527(f), the opinion of the state agency psychologist constitutes expert opinion evidence. Furthermore, the ALJ cited to specific medical evidence to support his finding that plaintiff's impairments did not meet the criteria for Listing 12.05C.  Thus, this court finds that the ALJ appropriately considered the information regarding plaintiff's impairments and Listing 12.05C and did not err in not obtaining medical expert testimony for this purpose.

      C.  Award of Benefits

Plaintiff's third claim is that this court should reverse the ALJ's decision and award benefits.  For the reasons set forth in the above report and recommendation this claim should also be denied.

Therefore, this court makes the following:

RECOMMENDATION

AND NOW, this 20th day of December, 2013, it is RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be DENIED

                                          BY THE COURT:

                                          /S LINDA K. CARACAPPA_____
                                          LINDA K. CARACAPPA
                                          UNITED STATES MAGISTRATE JUDGE