IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HECTOR VASQUEZ,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | CIVIL ACTION NO.: |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **ACTING COMMISSIONER OF** | : | **2:12-CV-6169-CDJ** |
| **THE SOCIAL SECURITY** | : | |
| **ADMINISTRATION,** | : | |
| | : | |
| **Defendant.** | : | |

### ORDER

**AND NOW**, this 31st day of March, 2014, it is hereby **ORDERED** that Plaintiff's Objections, (Doc. No. 16), are **OVERRULED**,[1] and the Report and Recommendation of the

---

[1] Plaintiff first objects to the Report and Recommendation on the ground that the ALJ failed to follow new social security regulations that adopt the definition of mental retardation utilized by one of the four major professional health organizations operating in the United States. (Obj. at 4.) A cursory reading of the language cited by plaintiff, which the court notes is not a regulation but rather a response to a public comment, demonstrates that plaintiff's position is completely without merit. It states:

> The definition of MR we use in our listings *is consistent with, if not identical to*, the definitions of MR used by the leading professional organizations. The four major professional organizations in the United States that deal with MR have each established their own definition of MR. While all the definitions require significant deficits in intellectual functioning, as evidenced by IQ scores of approximately 70 or below, age of onset and the method of measuring the required deficits in adaptive functioning differ among the organizations. . . .
>
> The definition of MR used by SSA in the listings is not restricted to diagnostic uses alone, *nor does it seek to endorse the methodology of one professional organization over another*. While capturing the essence of the definitions used by the professional organizations, it also is used to determine eligibility for disability benefits. SSA's definition establishes the necessary elements, while *allowing* use of any of the measurement methods recognized and endorsed by the professional organizations.

---

*Technical Revisions to Medical Criteria for Determination of Disability*, 67 FR 20018-01 (Notice and Comment Section) (italics added).

 Furthermore, as noted above, the cited language is a portion of a public comment and response, not a regulation, which, when viewed in the entirety, demonstrates that the Administration refused to adopt the American Psychiatric Association's definition of mental retardation:

> Comment: One commenter recommended that we use the definition of mental retardation (MR) found in the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV), published by the American Psychiatric Association, as the definition of MR in listing 12.05 and 112.05.
>
> Response: *We did not adopt the comment*. The definition of MR we use in our listings is consistent with, if not identical to, the definitions of MR used by the leading professional organizations. The four major professional organizations in the United States that deal with MR have each established their own definition of MR. While all the definitions require significant deficits in intellectual functioning, as evidenced by IQ scores of approximately 70 or below, age of onset and the method of measuring the required deficits in adaptive functioning differ among the organizations.

*Id.* (italics added).

 The SSA's response indicates that the Administration's definition of mental retardation allows consultation of the definition of mental retardation utilized by the major professional organizations but does not require the ALJ to adopt one or more of those definitions. Furthermore, the comment explains that the purpose of the definition of mental retardation in the social security context is different than it is in the mental health context because the SSA's definition is used to "determine eligibility for disability benefits" while professional health organizations' tests are for diagnosis and treatment purposes. *Id.*

 In reviewing plaintiff's objections, the court notes that plaintiff block quoted the SSA's entire response to a public comment except for the first sentence, which in essence declined to adopt the definition of a leading professional organization, the APA. Furthermore, counsel indicated that the quoted language was a portion of a SSA regulation, a cursory reading suggests that it was part of the SSA's notice and comment section to a regulation. These misrepresentations stray dangerously close to violating Rule 3.3 of the Pennsylvania Rules of Professional Conduct and have the potential to undermine the integrity of the adjudicative process. The court trusts that counsel will avoid such errors in the future.

 Plaintiff next objects to the Report and Recommendation on the ground that ALJ's decision was not supported by substantial evidence. By way of relevant background, a social security claimant bears the initial burden of demonstrating a medical impairment "that prevents him from engaging in any substantial gainful activity for a statutory twelve month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57 (3d Cir. 1988). Once the claimant has established an impairment, the burden of proof shifts to the Social Security Administration to

establish a claimant's residual functional capacity and determine whether "the claimant is capable of performing other jobs existing in significant numbers in the national economy." *Poulos v. Comm'r of Social Security*, 474 F.3d 88, 92 (3d Cir. 2007). The Social Security Administration's burden encompasses a five part test, the third part of which is at issue here. Part three provides:

> "At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled."

20 C.F.R. §404.1520.

Here, plaintiff claims that the evidence did not support the ALJ's determination that plaintiff's mental retardation did not meet the list of impairments in Listing 12.05C. In particular, he claims that the ALJ failed to consider plaintiff's school achievements, his use of learning support services while in school, his lack of work history, and his lack of a support system and frequent arrests. (Obj. at 7-8.) Furthermore, plaintiff argues that the ALJ improperly failed to "analyze[] why moderate limitations in maintaining concentration, persistence, or pace do not constitute deficits in adaptive functioning." (Obj. at 9.)

A district court reviews the decision of an ALJ under the substantial evidence standard of review; that is, the district court may not disturb the administrative law judge's decision if it is supported by substantial evidence. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Id.*

The ALJ in this case opined:

> In activities of daily living, the claimant has mild restrictions. For 8 hours a day, the claimant is the sole care taker for his 5 month old daughter (Testimony) while the mother of the child is in school. He has no problem with personal care (Exhibit 5E). He cooks, cleans the house, washes his car, shops, and does laundry (Exhibits 5E and 16F).
> In social functioning, the claimant has mild difficulties. The claimant visits family and friends (Exhibit 5E). He has no problem getting along with co-workers and supervisors (Exhibit 16F).
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant is diagnosed with affective disorder, borderline intellectual functioning, anxiety-related disorders, and substance addiction disorder. The claimant has difficulty with focus and concentration (Exhibit16F), and has difficulty following instructions and completing tasks (Exhibit 5E).
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. Although the claimant has been hospitalized multiple times, it has not been for extended periods of the time within the meaning of the regulations.

(Doc. No. 7, Attach. 2, at 21.)

Honorable Linda K. Caracappa, (Doc. No. 15), is **ADOPTED IN ITS ENTIRETY**. It is further

**ORDERED** that Plaintiff's Request for Review, (Doc. No. 3), is **DENIED**. The Clerk of Court is

**DIRECTED** to **CLOSE THE CASE** for statistical purposes.

                **BY THE COURT:**

                **/s/ C. Darnell Jones, II   J.**
                **C. DARNELL JONES, II   J.**

---

       The ALJ went on to explain that the requirements of 12.05 were not met by plaintiff because he did not exhibit dependence upon others for his personal needs or demonstrate an inability to follow directions. This decision is supported by the opinion of state agency psychologist John Grutkowski, Ph.D., who evaluated plaintiff's impairments and suggested that they did not meet the criteria of Listing 12.05C. (Doc. No. 7, Attach. 10, at 586.) Based on the evidence of record, the court must conclude that the ALJ's decision was supported by substantial evidence. *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (quoting SSR 96-6p) ("State agent opinions merit significant consideration as well.").